Argued and submitted January 17, accused suspended from the practice of law for 63 days July 18, 1997

In re Complaint as to the Conduct of

# ROY B. THOMPSON,
*Accused.*

## (OSB 94-198; SC S43466)

940 P2d 512

468

Brad Littlefield, of Williams, Fredrickson & Stark P.C., Portland, argued the cause for the accused. With him on the briefs was Steven M. Claussen, Portland.

Mary Cooper, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.*

PER CURIAM

* Kulongoski, J., did not participate in the consideration or decision of this case.

## PER CURIAM

In this lawyer disciplinary proceeding, a trial panel of the Disciplinary Board found the accused guilty of violating Disciplinary Rule (DR) 7-110(B) (prohibiting *ex parte* communication with the court on the merits of a pending case) and DR 1-102(A)(4) (prohibiting conduct that is prejudicial to the administration of justice) and imposed a public reprimand. The accused sought review. Bar Rules of Procedure (BR) 10.1 and 10.3. On *de novo* review, ORS 9.536(3) and BR 10.6, we find the accused guilty of violating DR 7-110(B) and DR 1-102(A)(4), and we suspend him from the practice of law for 63 days.

The conduct that led to this disciplinary matter is by and large undisputed. In 1990, former clients of the accused, Eagle Industries, Inc. (Eagle), and Linda and James Tucker, filed a civil action against the accused alleging a breach of fiduciary duty and a breach of contract and seeking, among other relief, rescission of two fee agreements. The action was bifurcated into an equity phase and a legal phase. A trial court ruled in favor of Eagle and the Tuckers in the equity phase, and a jury later returned a verdict in favor of Eagle and the Tuckers in the legal phase. The accused appealed.

The accused's appeal was argued before a panel of the Court of Appeals comprised of Presiding Judge Rossman and Judges De Muniz and Leeson. On April 27, 1994, the Court of Appeals issued its opinion affirming the trial court's judgment on all issues but one. *Eagle Industries, Inc. v. Thompson*, 127 Or App 595, 873 P2d 479 (1994), *aff'd in part, rev'd in part* 321 Or 398 (1995). The Tuckers were designated as the prevailing party and, under appellate court rules, the accused had 14 days during which to request reconsideration. ORAP 6.25(2).

On April 28, 1994, the accused received the appellate court's decision. That same day, he drove from his office in the Portland area to Salem with the intention of discussing the decision with Judges Rossman, Leeson, and De Muniz. He testified during the disciplinary hearing that he hoped to discuss with Judge De Muniz how the judges had voted in their deliberation on the case and to bring to the court's

attention information showing that, in his view, Judge Leeson had a conflict of interest in the case. He further testified that he did not call ahead to schedule an appointment, because he wanted the element of surprise in his favor. He thought that he might get "more of the truth" from the judges if they did not have time to prepare a "cover-up."

As the accused appeared on the third floor of the Justice Building, where the Court of Appeals has its offices, he encountered a judicial assistant whose desk was close to the elevator door. The accused asked if Judge De Muniz was in his office. The assistant replied that Judge De Muniz was not available. The accused then asked to speak with Judges Rossman and Leeson. Believing that the accused was angry and agitated, the assistant became frightened. She stepped out of the accused's view for a moment, then returned to tell the accused that Judge Leeson was not in her office. At that moment, the accused saw Judge Leeson walking down the hallway with a law clerk.

The accused started walking toward Judge Leeson, shaking a copy of the appellate opinion in his hand, which was outstretched above him. As he approached the judge, the accused said in an angry tone:

"These are lies. You know these are lies. You are sending me to hell with these lies. You haven't read the record. The least you could do is to read the record."

Out of concern for Judge Leeson's safety, the law clerk stepped between the judge and the accused, informed the accused that he had to leave, and advised him that he could express himself in writing. The accused replied:

"I know what I can do. It's all just legal games. You know that. But I know what to do, and you're sending me to hell."

The judicial assistant then told the accused that if he did not leave immediately she would call security. At that time, the accused left the building.

A complaint was filed with the Oregon State Bar (the Bar), alleging that the accused had violated DR 7-110(B) and DR 1-102(A)(4). The trial panel found the accused guilty of both violations and imposed a public reprimand.

The accused makes three arguments. First, he argues that the trial panel's decision should be nullified on the ground of improper venue, citing BR 5.3. Second, he argues that he did not violate DR 7-110(B), because his communication was not "on the merits" of a pending case. Third, he argues that he did not violate DR 1-102(A)(4), because his conduct in confronting Judge Leeson did not cause or potentially cause "substantial harm to the administration of justice." The Bar responds that the accused failed to preserve his venue objection and that the trial panel correctly found that he violated DR 7-110(B) and DR 1-102(A)(4). The Bar further argues that the accused's conduct warrants a suspension of not less than 35 days.

The accused first argues that the trial panel's decision should be nullified, because the trial panel violated BR 5.3 by conducting the proceedings in Multnomah County. BR 5.3(a) provides, in part:

> "In the trial of any disciplinary proceeding, the hearing shall be held either in the county in which the person charged maintains his or her office for the practice of law or other business, in which he or she resides, or in which the offense is alleged to have been committed, in the discretion of the trial panel chairperson. With the consent of the accused, the hearing may be held elsewhere."

The accused argues that he lives and works in Clackamas County and that the disciplinary violations here are alleged to have been committed in Marion County. Therefore, he argues, it was error to hold the hearing in Multnomah County without his consent. At trial, however, the accused did not cite BR 5.3 as a basis for objecting to venue. We will not consider an argument that is raised for the first time on review. *See* BR 10.6 ("The court shall consider each matter de novo upon the record."); ORAP 5.45(2) (no matter assigned as error will be considered on appeal unless it was preserved in the lower court).

We next address the accused's second argument, that he did not violate DR 7-110(B), because his communication with Judge Leeson was not "on the merits" of a pending case. DR 7-110(B) provides, in part:

"In an adversary proceeding, a lawyer shall not communicate, or cause another to communicate, as to the merits of the cause with a judge or an official before whom the proceeding is pending * * *."

The accused does not argue that an "adversary proceeding" was not "pending"[1] or that DR 7-110(B) does not apply to lawyers acting in the capacity of litigants.[2]

In *In re Smith*, 295 Or 755, 760, 670 P2d 1018 (1983), this court stated:

"We have had little opportunity to consider what constitutes 'the merits of the cause' in this context. * * * [I]t is necessary to look to the content of the communication to determine if the evils of *ex parte* contact, improperly influencing and inaccurately informing the judge, *In re Burrows*, [291 Or 135, 144, 629 P2d 820 (1981),] have occurred. The merits of a proceeding have to do with the legal rights and duties of the parties as they are disclosed by the pleadings and evidence. *See Crow v. Abraham*, 86 Or 99, 167 P 590 (1917) and *Haney v. Neace-Stark Co.*, 109 Or 93, 216 P 757, 219 P 190 (1923) defining judgments 'on the merits.' The crucial question is whether an *ex parte* contact affects any legal right or duty of the parties." (Footnote omitted.)

The accused argues that *Smith* stands for the proposition that an *ex parte* communication violates DR 7-110(B) only when it actually affects a legal right or duty of a party, and not when it only potentially affects a legal right or duty of a party. He postulates that, because the Court of Appeals took no further action in his case after his confrontation with Judge Leeson, his communication did not in fact "affect" a

---

[1] An action is considered pending from its inception until the rendition of a final judgment. *State v. Hilborn*, 299 Or 608, 611, 705 P2d 192 (1985). At the time of the accused's conduct, a final appellate judgment had not been entered, and the accused still could have petitioned the Court of Appeals to reconsider its decision. *See* ORAP 6.25(2) (party has 14 days from date of decision to petition for reconsideration). *See also In re Schenck*, 318 Or 402, 424, 870 P2d 185 (1994) (in judicial disciplinary action, judge's letter to the Supreme Court after the issuance of a mandamus decision involving that judge was an *ex parte* communication concerning a "pending" proceeding, because the time for a petition for reconsideration of the court's decision had not yet expired); *but see In re Schenck*, 320 Or 94, 103-04, 879 P2d 863 (1994) (concluding there was no violation of DR 7-110(B), because the communication was not "on the merits").

[2] *See In re Staar*, 324 Or 283, 289, 924 P2d 308 (1996) (Disciplinary Rules apply to conduct of lawyers even when they are acting on their own behalf).

legal right or duty of a party and, thus, was not "on the merits."

■■     We disagree. If that were the correct standard, whether a lawyer violates DR 7-110(B) would depend entirely on how the judge or the official to whom the *ex parte* communication was made *responded* to the communication. However, nothing in DR 7-110(B) suggests that a lawyer must be *successful* in improperly influencing a judge's or an official's decision for an *ex parte* contact to be improper. The impermissible *ex parte* communication itself constitutes the violation. As this court stated in *Smith*, 295 Or at 759, the purpose of DR 7-110(B) is to prevent the effect, or even the appearance, of granting undue advantage to one party to the litigation. A communication with the court becomes an impermissible *ex parte* contact when it is made to a judge "before whom the proceeding is pending" and when it concerns "the merits of the cause." DR 7-110(B). The accused's encounter with Judge Leeson certainly would appear as an opportunity for the accused to attempt to assert undue influence over Judge Leeson's decision-making authority in a pending case.

■     Further, the accused misreads this court's holding in *Smith* to require that an *ex parte* communication have an *actual* effect before it is improper. The accused in *Smith* represented a wife in a custody dispute against the former husband. The accused mailed a proposed "show cause" order to the trial court and to opposing counsel ordering, among other things, that the husband show cause why the wife should not be allowed to move out of state permanently with the children. The proposed order mailed to the court contained an extra provision, not contained in the copy mailed to opposing counsel, that ordered that wife be allowed to move out of state temporarily with the children. The wife already was authorized to move the children out of state temporarily under the terms of the existing dissolution decree. This court held that the accused's *ex parte* communication—the extra paragraph slipped into the proposed order mailed to the court—was not "on the merits," because it did not affect the legal rights or duties of wife by giving her greater rights than she already had under the decree. *Smith*, 295 Or at 761.

■     The facts and rationale of *Smith* demonstrate what this court intended when it stated in that case that "the crucial question is whether an *ex parte* contact *affects* any legal right or duty of the parties." *Id.* at 760 (emphasis added). That question is determined as of the time that the *ex parte* communication is made. Thus, in *Smith*, the communication was not "on the merits" because, at the time it was made, the communication did not affect any legal right or duty of the parties. No matter how the judge may have responded to the proposed order to show cause, the legal rights and duties of the parties would have remained the same.

■     In the present case, by contrast, at the time that the accused made his *ex parte* contact with Judge Leeson, his statements could have affected the legal rights and duties of the parties. The case was still within the Court of Appeals' jurisdiction and was subject to modification by that court. The accused's criticism of Judge Leeson was an attempt to convey to her forcefully the accused's contrary view of the underlying facts of the case and to censure her for allegedly "ruining" his professional career. His implicit, if not explicit, message was, "Judge Leeson, you were wrong, and you must correct your error." The fact that the Court of Appeals took no further action in the case is irrelevant. The accused's conduct goes to the heart of the rule against impermissible *ex parte* communications. *See In re Burrows*, 291 Or 135, 144, 629 P2d 820 (1981) (the evils of *ex parte* contact are that (1) the judge may be improperly influenced, and (2) the judge may be inaccurately informed).

We conclude that there is clear and convincing evidence that the accused's *ex parte* communication with Judge Leeson was "on the merits" of the cause. We hold that the accused violated DR 7-110(B).

■     We now turn to the accused's final argument, that he did not violate DR 1-102(A)(4), because his conduct in confronting Judge Leeson did not cause "substantial harm to the administration of justice." DR 1-102(A)(4) provides:

"It is professional misconduct for a lawyer to:

"* * * * *

"(4) Engage in conduct that is prejudicial to the administration of justice[.]"

The dispute here centers on the requirement of "prejudice."

In *In re Haws*, 310 Or 741, 748, 801 P2d 818 (1990), this court defined the meaning of "prejudice" as follows:

"[W]e choose to interpret the word 'prejudice' in the context of this rule to require either:

"1. Repeated conduct causing some harm to the administration of justice; *or*

"2. A single act causing substantial harm to the administration of justice." (Emphasis in original.)

Because the accused's conduct constituted a "single act," the Bar must prove that the act caused, or had the potential to cause, a "substantial" harm to the administration of justice in order to find a violation of DR 1-102(A)(4). *Id.* at 747-48. The Bar, however, need not prove *actual* substantial harm or injury. *See In re Rex Q. Smith*, 316 Or 55, 59, 848 P2d 612 (1993) (conduct is prejudicial if it caused, or had the potential to cause, harm or injury). The debate focuses on whether the Bar proved by clear and convincing evidence that the accused's conduct caused, or had the potential to cause, substantial harm to the administration of justice.

■    As discussed, the accused's communication, delivered while the case was still pending, was an improper *ex parte* communication with Judge Leeson concerning her participation in what the accused believed to be an incorrect decision. That conduct alone caused substantial harm to the administration of justice by unfairly attacking the independence, integrity, and respect due a member of the judiciary. Also, the accused's conduct potentially caused substantial harm, because Judge Leeson might have been improperly influenced or intimidated into changing her decision or to recuse herself from any further participation in the case. Moreover, the accused's conduct caused substantial harm to the administration of justice by subjecting court personnel to his frightening emotional outburst. We conclude that the Bar has proved by clear and convincing evidence that the accused's conduct caused substantial harm, and had the

potential to cause even more substantial harm, to the administration of justice. We hold that the accused violated DR 1-102(A)(4).

■ We now turn to a consideration of the appropriate sanction. The Bar argues on review that the public reprimand imposed by the trial panel is insufficient given the nature of the accused's misconduct. At trial, the Bar asked for a suspension of not less than 35 days.

In considering the appropriate sanction for the violations found, we refer to the ABA *Model Standards for Imposing Lawyer Sanctions* (1991) (ABA Standards). *In re Jeffrey*, 321 Or 360, 374, 898 P2d 752 (1995). We consider the duty violated, the mental state involved, the injury that resulted, and any aggravating or mitigating circumstances. *Ibid.*

Duty. The accused violated a duty to the legal system and to the profession to avoid conduct prejudicial to the administration of justice and to avoid improper *ex parte* communications with a judge on a pending matter. ABA Standards 6.1 and 6.3.

Mental State. The accused's conduct was intentional. Under the ABA Standards, an act is "intentional" if it is done with the conscious objective or purpose to accomplish a particular result. ABA Standards at 7.

The accused's own testimony, that he did not call ahead to schedule an appointment because he wanted to surprise the judges to prevent them from covering up their alleged lies, could suggest that he sought to intimidate the judges into reconsidering their decision. However, it is also possible that the accused may have had a more limited objective, *i.e.*, to vent his frustration at having lost on appeal. Although such conduct demands a sanction, we do not believe that disbarment or a long suspension is required in these circumstances. *See* ABA Standard 6.31 (disbarment is generally appropriate when a lawyer makes *ex parte* contact with judge with intent to affect the outcome of the proceeding and the contact causes serious or potentially serious injury to a party); ABA Standard 6.32 (suspension is appropriate when

a lawyer knows that a communication is improper and the contact causes injury or potential injury to a party).

Injury. As discussed above, the accused's improper *ex parte* communications created a risk that Judge Leeson would be persuaded or intimidated into modifying her decision in the proceeding—surely a grave harm. Also, apart from the damage that the accused *might have* caused, his conduct, in fact, was an unwarranted and abusive criticism of a member of the judiciary—also a grave harm. Finally, the accused's conduct subjected court personnel to a frightening experience.

Aggravating and Mitigating Factors. The trial panel found as a mitigating factor that the accused acted in "good faith" in the following ways: by refraining from contacting the court before it had rendered its decision; by believing, based on his research, that an *ex parte* communication with the judges was permissible; and by deciding not to seek further action by the Court of Appeals concerning his case. We conclude that none of those findings provides a basis for mitigation.

Obviously, the accused could not have known the court's decision before it was announced and, therefore, without any impetus to communicate with the court, the accused's "refraining" from contacting the court before it had rendered its decision is of no moment.[3] Moreover, whatever efforts the accused made to research the propriety of his conduct is more than offset by his conduct and motive here, specifically his desire to catch the judges off guard, so that, in his own words, they would be unable to create a "cover-up," and the inappropriate and hostile manner in which he delivered his message. Contrary to the view of the trial panel, we find no mitigating factor here.

The trial panel also found as a mitigating factor that, although the accused violated DR 1-102(A)(4), "the potential for harm caused by the conduct was small." We disagree. The

---

[3] The accused testified in part that his intent in contacting the court was to discuss Judge Leeson's alleged potential conflict of interest in sitting on the case. Assuming that to be his intent, it cannot be said that he acted in "good faith" by waiting until *after* the issuance of the decision before bringing any potential conflict to the attention of the court through an *ex parte* contact.

trial panel's conclusion in that regard rests on its finding that the only cognizable "harm" was the *potential* that Judge Leeson might modify her decision in response to the accused's *ex parte* communication. As discussed above, we conclude that the harm was far more extensive than the trial panel's narrow characterization.

We do find two mitigating factors, however. First, the accused has no prior disciplinary record. ABA Standard 9.32(a). Second, he provided full and free disclosure to the Disciplinary Board, and he was cooperative throughout these proceedings. ABA Standard 9.32(e).

We also find two aggravating factors. First, the accused acted with a selfish motive. ABA Standard 9.22(b). Second, the accused has substantial experience in the practice of law. ABA Standard 9.22(i). We agree with the Bar that the aggravating factors outweigh the mitigating factors. None of the cases cited by the parties is precisely on point. *See, e.g., In re Rex Q. Smith* (35-day suspension for threatening and attempting to intimidate a witness); *In re Rochat*, 295 Or 533, 668 P2d 376 (1983) (35-day suspension for lawyer who behaved in disruptive and threatening manner towards court personnel in attempt to obtain court appointments); *In re Bell*, 294 Or 202, 655 P2d 569 (1982) (30-day suspension for *ex parte* contact with judge as to the merits of case).

Here, the accused's improper *ex parte* contact in manner and in words was threatening toward Judge Leeson and court personnel. Such behavior by an officer of the court is unacceptable and will not be tolerated by this court. We conclude that a suspension from the practice of law for 63 days is the appropriate sanction.

The accused is suspended from the practice of law for 63 days commencing on the effective date of this decision.