Argued and submitted May 8, complaint dismissed July 7, 2006

In re Complaint as to the Conduct of

WILLARD MERKEL,
*Accused.*

(OSB 04-154; S52856)

138 P3d 847

Wayne Mackeson of Birmingham & Mackeson, LLP, Portland, argued the cause and filed the brief for the accused.

Jane E. Angus, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar. With her on the brief was David L. Slader, Bar Counsel.

PER CURIAM

Kistler, J., concurred in part and dissented in part and filed an opinion in which Gillette and Balmer, JJ., joined.

144

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar charged the accused with violating the Oregon Code of Professional Responsibility Disciplinary Rules (DR) 7-110(B) (prohibiting *ex parte* communication with court on merits of pending case) and DR 1-102(A)(3) (prohibiting dishonesty, fraud, deceit, and misrepresentation).[1] A trial panel of the Disciplinary Board concluded that the accused had violated DR 1-102(A)(3), but not DR 7-110(B), and imposed a public reprimand as a sanction. The accused sought review, arguing that he had not violated DR 1-102(A)(3). The Bar maintains that he violated both rules and requests that this court suspend the accused from the practice of law for 60 days.

We review a decision of the trial panel *de novo*, ORS 9.536(2). The Bar must establish misconduct by clear and convincing evidence, which "means evidence establishing that the truth of the facts asserted is highly probable." *In re Cohen*, 316 Or 657, 659, 853 P2d 286 (1993). On *de novo* review, we conclude that the Bar has failed to establish by clear and convincing evidence that the accused violated DR 1-102(A)(3) or DR 7-110(B).

We find the following facts. The accused became a member of the Bar in 1979 and has no previous disciplinary record. A client retained the accused to pursue a personal injury claim against Tri-County Metropolitan Transportation District of Oregon (TriMet), and an arbitrator set the case for an arbitration hearing on April 23, 2004. Toran, Director of Legal Services at TriMet, represented TriMet. The accused and Toran had a contentious professional relationship when the events in this case unfolded.

Prior to the hearing, the accused subpoenaed two witnesses. Between April 21 and April 22, 2004, both witnesses contacted the accused and informed him that they could not attend the arbitration, but agreed to testify by

---

[1] The Oregon Rules of Professional Conduct became effective January 1, 2005. Because the conduct at issue here occured before that date, the Oregon Code of Professional Responsibility applies.

telephone. Early on the morning of April 22, around 8:00 a.m., the accused called the arbitrator. He asked the arbitrator about his policy regarding telephone testimony and whether he had access to a speaker telephone. The arbitrator advised the accused that he had a speaker telephone and that "it's okay with me if it's okay with [opposing counsel]." The arbitrator made no ruling regarding the admissibility of telephone testimony during the call. That call lasted approximately 30 seconds.

That same morning, the accused sent Toran a letter by fax. The letter stated that two witnesses had contacted the accused and informed him that they could not attend the arbitration. The letter then stated:

"I have contact telephone numbers for each of these witnesses and intend to present their testimony by speaker phone. I have cleared this with the arbitrator who asked me in turn to advise you of these developments. Please call if there are questions."

Toran responded by addressing a letter to the arbitrator and sending it by fax to both the arbitrator and the accused. In it, Toran stated that she objected to the use of telephone testimony and asked that the arbitrator "either disallow the testimony of these witnesses by telephone or that the arbitration be continued until such time as they are available to testify in person." She requested a decision by the end of the day. Toran also asserted that the accused's telephone conversation with the arbitrator was an improper *ex parte* communication and violated DR 7-110(B).

The arbitrator received the letter and scheduled a telephone conference with Toran and the accused for that same day. During the conference, the arbitrator ruled that he would prohibit telephone testimony and continued the hearing until a later date.

Subsequently, Toran filed a complaint with the Bar, alleging that the accused had violated DR 7-110(B) by his communication with the arbitrator and DR 1-102(A)(3) when he misrepresented to Toran that he had "cleared" testimony by telephone with the arbitrator. The Bar requested a response from the accused. In a May 18, 2004, letter, the

accused stated that he had not engaged in *ex parte* contact with the arbitrator. He also stated that he had "called [Toran's] office the morning before the hearing to determine whether she objected" to telephone testimony, but "[s]he was out." He maintained that he had faxed the letter to Toran, "intending to provide her an opportunity to object." The Bar found that there was insufficient evidence of misconduct and stated that it would not take further action on the matter. However, the Bar informed Toran that, if she disagreed with the Bar's disposition, she could request that the General Counsel of the Bar review her complaint. *See* BR 2.5(a)(1) (describing review procedure).

Subsequently, Toran requested that General Counsel review her complaint and added to her allegations that the accused had misrepresented to the Bar that he had called Toran on the morning of April 22, 2004, prior to contacting the arbitrator. She attached telephone records that listed all incoming calls to TriMet. The accused's telephone numbers were not among those listed for the morning of April 22. A voice-systems engineer testified at a subsequent hearing that TriMet's telephone system captures the telephone numbers of all incoming calls as long as a person answers the call. The system does not record hang-ups and calls answered by a voicemail message.

General Counsel reviewed the matter and referred the complaint to disciplinary counsel. The Bar later requested further information from the accused. In a September 21, 2004, letter to the Bar, the accused indicated that he was responding to the best of his ability to recall the events from memory. He stated that:

> "My memory is that I called one of the TriMet phone numbers from my office the morning before the arbitration hearing intending to ask whether defense counsel objected to two witnesses testifying by telephone. I do not remember which office line I used to make the call, nor do I remember which of the TriMet lines I dialed. My memory is that a female voice answered, I asked for Ms. Toran, and was told that she was out, and that I didn't pursue the matter. My memory of the conversation is that it lasted about five seconds. After reviewing my file, I find no file notes on the topic

which leads me to believe I may be mistaken and may be confusing the call with a call on another file."

The Bar charged the accused with violating: (1) DR 7-110(B), for the accused's telephone communication with the arbitrator; (2) DR 1-102(A)(3), for misrepresenting that he had called Toran prior to calling the arbitrator; and (3) DR 1-102(A)(3), for conveying to Toran that he had "cleared" telephone testimony with the arbitrator when he had not. The trial panel determined that the accused did not have *ex parte* communications with the arbitrator. However, the trial panel concluded that the accused had committed both alleged DR 1-102(A)(3) violations and imposed a sanction of a public reprimand.

We first address the charge regarding an *ex parte* communication. DR 7-110(B) provides, in part, that "a lawyer shall not communicate, or cause another to communicate, as to the merits of the cause with a judge or an official before whom the proceeding is pending * * *." The purpose of that rule is to prevent a party from improperly influencing or inaccurately informing a judge. *In re Burrows*, 291 Or 135, 144, 629 P2d 820 (1981). Here, there is no dispute that the accused was involved in a proceeding pending before the arbitrator and that he spoke to the arbitrator outside opposing counsel's presence. The only question is whether the communication concerned the merits of the cause. An *ex parte* contact is considered "on the merits" if it "affects any legal right or duty of the parties." *In re Smith*, 295 Or 755, 760, 670 P2d 1018 (1983). A lawyer need not be successful in improperly influencing a judge; an attempt is sufficient. *In re Thompson*, 325 Or 467, 473, 940 P2d 512 (1997).

The Bar argues that the content of the accused's *ex parte* communication was on the merits because it regarded "TriMet's right to agree or to object to the presentation of telephone testimony." The evidence does not support that argument. The conversation concerned the procedural issues of whether the arbitrator had speaker telephone technology and the arbitrator's policy regarding telephone testimony, not whether TriMet had a right to agree or to object to the presentation of testimony by telephone. The accused did

not ask for such a ruling, nor did the arbitrator make a ruling. As the Bar correctly notes, a ruling by the arbitrator is not a prerequisite for a DR 7-110(B) violation. However, the Bar points to no evidence that the accused attempted to persuade the arbitrator to allow telephone testimony or otherwise attempted to improperly influence the arbitrator. The arbitrator testified that the conversation was not an improper *ex parte* communication. It does not appear that the communication was "on the merits" of the pending proceeding. Considering the entirety of the evidence, the Bar did not prove by clear and convincing evidence that the accused violated DR 7-110(B).

■ Next, we address the Bar's charges regarding misrepresentation. DR 1-102(A)(3) states that it is professional misconduct for a lawyer to "[e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation." Conduct involving misrepresentation can include a material nondisclosure. *In re Hiller*, 298 Or 526, 533, 694 P2d 540 (1985). However, "[t]o establish misrepresentation by nondisclosure, the Bar must meet a high standard of proof: The Bar must establish that the accused lawyer knowingly failed to disclose a fact that the accused lawyer had in mind and knew to be material." *In re Huffman*, 331 Or 209, 218, 13 P3d 994 (2000). "[M]aterial information is information that, if it had been known by the court or other decision-maker, would or could have influenced the decision-making process significantly." *In re Gustafson*, 327 Or 636, 649, 968 P2d 367 (1998).

■ The Bar charges the accused with engaging in two instances of conduct involving misrepresentation. First, the Bar contends that the accused's letter to Toran created the false impression that the arbitrator had agreed to allow the accused's witnesses to testify by telephone. Second, the Bar asserts that the accused failed to disclose that the arbitrator stated that he would allow telephone testimony only if Toran agreed to it.

The accused's letter to Toran stated that he had telephone numbers for the witnesses and "intend[ed] to present their testimony by speaker phone." The letter then informed Toran that the accused had "cleared this with the

arbitrator who asked me in turn to advise you of these developments." The trial panel agreed with the Bar that the accused's use of the word "cleared" created the impression that "the issue was a 'fait accompli.'" However, in reaching that conclusion, the trial panel incorrectly quoted the accused's letter, stating that the accused had written that he had "cleared his presentation of testimony by telephone with the arbitrator."

The accused's letter stated that the accused intended to present testimony by speaker telephone; it did not state expressly that the arbitrator had ruled that he would admit testimony by telephone or that Toran was precluded from objecting to the admission of testimony by telephone. The Bar, however, argues that the accused's use of the term "cleared" created a false inference.

The term "cleared" is, in context, ambiguous. On the one hand, a reader might interpret that term, as the Bar claims, to indicate that the arbitrator had authorized the submission of telephone testimony at the hearing. On the other hand, a reader also might interpret that term to indicate only that the accused had apprised the arbitrator of his intention to present telephone testimony at the hearing and that the arbitrator was amenable to the proposal. In examining the evidence, we may consider the relative strength of those competing inferences that the ambiguous word "cleared" could create. *See In re Phelps,* 306 Or 508, 513, 760 P2d 1331 (1988) (Bar may satisfy its burden if court draws necessary inferences from evidence).

Viewing the accused's letter in context, it is difficult to conclude that the accused knowingly sought to convey the first inference discussed above. To draw that inference, the reader would have to believe that (1) the accused was willing to breach a well-accepted procedural norm in the presence of a witness, the arbitrator; (2) the arbitrator himself had chosen to commit a breach of fundamental fairness by binding Toran to a ruling admitting telephone testimony without affording her any right to be heard; and (3) Toran, an experienced lawyer, would presume that she could raise no objection, before or during the hearing, to the admission of witness

testimony by telephone. Nothing in the record indicates that those assumptions regarding the accused's letter are true.

To establish a charge of misrepresentation, it is not necessary that the Bar prove that the recipient of the alleged misrepresentation detrimentally relied on the accused's statement. Nevertheless, in determining which of the two competing inferences that the accused likely intended to convey by his statement, we may examine all the circumstances surrounding the communication, including the reactions of the arbitrator and Toran. Those reactions may shed some light on the reasonableness of the competing inferences that the parties claim to draw from an ambiguous representation of fact by an accused. That information, in turn, may help explain which of the two competing inferences that the accused meant to convey by his statement.

As noted, Toran asserted a written objection to receiving the disputed testimony by telephone as soon as she became aware of the accused's letter. She sought a ruling on her objection by the end of the day. Even if Toran assumed that the arbitrator actually had decided to admit telephone testimony—an erroneous assumption, if she made it—she clearly did not assume that the arbitrator already had foreclosed her from objecting to the receipt of that testimony by telephone.

Before the trial panel, the accused contended that the arbitrator had made no ruling on the receipt of telephone testimony and that the arbitrator's brief conversation with the accused about the speaker telephone issue had not prejudiced the position of either party. The arbitrator generally corroborated the accused's version of those events.

Considering the totality of the evidence, the Bar has not proved by clear and convincing evidence that the accused made a knowing misrepresentation, or misrepresentation by nondisclosure, in his letter to Toran. In our view, the letter fairly stated the accused's intention to offer some witness testimony by speaker telephone and that the arbitrator had no problem with that procedure. In context, the absence of express notice in the letter that Toran could object if she so desired was immaterial; Toran knew that she could object to

the procedure if she wished, and she did so promptly. The evidence in this record does not demonstrate clearly and convincingly that the accused's failure to alert Toran in his letter about her right to object to the telephone procedure significantly could affect Toran's decision-making process. Although, as noted, the accused's use of the word "cleared" in his letter created an ambiguity, the Bar did not prove that the letter amounted to misrepresentation under DR 1-102(A)(3).

In its second charge of misrepresentation, the Bar alleges that the accused misrepresented to the Bar that he had telephoned Toran prior to contacting the arbitrator on the morning of April 22, 2004. The accused's initial response to the Bar stated that he had called Toran prior to calling the arbitrator, but Toran was out. In his second response to the Bar, following Toran's allegation that the accused had misrepresented that he had called her and the Bar's request for the accused's response, the accused sought to clarify his earlier statement by asserting that he remembered calling Toran's office and that a female voice had answered and informed him that Toran was out. He also stated that he had no file notes regarding the call and, therefore, he "may be mistaken and may be confusing the call with a call on another file."

The trial panel found, on the basis of TriMet's telephone logs, that the accused did not call Toran. We find, however, that the telephone logs alone do not present clear and convincing evidence that the accused violated DR 1-102(A)(3). A lawyer violates DR 1-102(A)(3) when he makes a knowing, affirmative false statement to another. *In re Lawrence*, 337 Or 450, 464, 98 P3d 366 (2004). There is not clear and convincing evidence that the accused uttered a knowing falsehood when he stated that he had called Toran. The Bar's evidence—the TriMet telephone log—proves only that the accused did not call TriMet and speak to a person. It also is possible that the accused called Toran, and the voicemail system answered his call. TriMet's telephone system does not record those calls.

The accused thought that he had called Toran when he first responded to the Bar. The record does not prove

clearly and convincingly that the accused's response, if false, was more culpable than an innocent false statement. An explanatory statement to the Bar may not be true, but the individual making the statement innocently may still believe in its truth. The accused later admitted that he might have been mistaken about calling Toran. He did not cling to or repeat a false statement with knowledge of its falsity. A mistake of that kind is not inconceivable considering the high volume of cases that the accused handled with TriMet. On the basis of the record, the Bar has failed to prove by clear and convincing evidence that the accused violated DR 1-102(A)(3).

Complaint dismissed.

**KISTLER, J.,** concurring in part and dissenting in part.

I agree with the majority that the accused's telephone call to the arbitrator did not constitute an *ex parte* communication in violation of DR 7-110(B). I also agree that the Bar failed to prove by clear and convincing evidence that the accused's statement that he had tried to speak with Toran before he telephoned the arbitrator was a misrepresentation. I would hold, however, that the accused misrepresented the arbitrator's ruling in his April 22, 2004, letter to Toran.

The day before a scheduled arbitration hearing, the accused called the arbitrator to ask whether the arbitrator, as a general matter, permitted witnesses to testify by telephone. According to the accused, the arbitrator responded, "[I]t's okay with me if it's okay with [opposing counsel]."

The accused then faxed a letter to Toran telling her that two witnesses whom he had subpoenaed would not be able to attend the scheduled hearing but that they would be available to testify by telephone. He added:

"I have contact telephone numbers for each of these witnesses and intend to present their testimony by speaker phone. I have cleared this with the arbitrator who asked me in turn to advise you of these developments. Please call if there are questions."

It is worth noting that, in reporting his conversation with the arbitrator, the accused did not say that the arbitrator would permit the two witnesses to testify if Toran would agree to that procedure. Rather, he said, "I * * * intend to present their testimony by speaker phone" and "I have cleared this with the arbitrator who asked me in turn to advise you of these developments." The accused thus omitted the condition that the arbitrator explicitly had placed on the use of telephonic testimony, and his use of the verb "cleared" implied an approval that the arbitrator never gave. Moreover, stating that the arbitrator had "asked [the accused] * * * to advise [Toran] of these developments" implies that the accused was accurately reporting what the arbitrator had ruled—something, it turns out, that the accused did not do.

DR 1-102(A)(3) provides that "[i]t is professional misconduct for a lawyer to * * * [e]ngage in conduct involving * * * misrepresentation." To establish that the accused made a misrepresentation, the Bar must prove by clear and convincing evidence that the misrepresentation was "knowing, false, and material in the sense that the misrepresentatio[n] would or could significantly influence the hearer's decision-making process." *In re Eadie*, 333 Or 42, 53, 36 P3d 468 (2001). A lawyer makes a misrepresentation "either when the lawyer makes an affirmative false statement or when the lawyer remains silent despite having a duty to speak." *In re Lawrence*, 337 Or 450, 464, 98 P3d 366 (2004).

The question whether the accused misrepresented the arbitrator's ruling turns initially on the message that his letter to Toran conveyed. In that letter, the accused began by saying, "I * * * intend to present [two witnesses's] testimony by speaker phone." The use of the verb "intend" implies a present intent to present the witnesses's testimony by telephone, not one that is conditioned either on Toran's agreement or on some future ruling by the arbitrator. The accused then added, "I have cleared this [*i.e.*, his intent to use telephonic testimony] with the arbitrator." In context, the accused's use of the word "cleared" implies that the arbitrator had approved the accused's intent of having the two witnesses testify by telephone. Equally telling is what the accused failed to mention. The accused did not say that the arbitrator would permit the witnesses to testify by telephone

only if Toran would agree with that procedure. The letter omits any mention of the condition that the arbitrator explicitly placed on the use of telephonic testimony.

The majority notes that it is possible to read the letter differently. It explains that "the letter fairly stated the accused's intention to offer some witness testimony by speaker telephone and that the arbitrator had no problem with that procedure." That reading gives too little weight to the ordinary meaning of the word "cleared" and fails to take account of the accused's omission of the specific condition that the arbitrator had placed on the use of telephonic testimony: The arbitrator said that the procedure would be permissible only if Toran approved.

This court has explained that " '[a] person must be able to trust a lawyer's word as the lawyer *should* expect [the lawyer's] word to be understood, without having to search for equivocation, hidden meanings, deliberate half-truths or camouflaged escape hatches.' " *Lawrence*, 337 Or at 466 (quoting *In re Hiller*, 298 Or 526, 534, 694 P2d 540 (1985) (brackets in original; emphasis added)). Taking the accused at his word, I would find his message unmistakable: His letter conveyed the message that the arbitrator had approved permitting the two witnesses to testify by telephone and had placed no conditions on the use of their telephonic testimony. Neither part of that message turned out to be true.

The majority reasons, however, that the omission of "express notice in the letter that Toran could object if she so desired is immaterial" because Toran was aware that she could object. With respect, that reasoning misses the mark. The point is not that Toran knew that she could lodge an objection to the arbitrator's ruling. Rather, the point is that the arbitrator said that he would not rule that the accused could use telephonic testimony unless Toran agreed. The difference between those two propositions is material, as is the accused's omission of the express condition that the arbitrator placed on the use of telephonic testimony. In relaying what the arbitrator had ruled, the accused should expect to be taken at his word " 'without [opposing counsel's] having to

search for equivocation, hidden meanings, deliberate half-truths or camouflaged escape hatches.' " *See id.* (holding lawyers to that standard).

I would find that the accused acted knowingly. He knew that the arbitrator had conditioned use of telephonic testimony on Toran's approval, but that is not what he said in his letter to Toran. Finally, I would hold that the misstatement was material. Materiality does not turn on whether a statement in fact affected the hearer's decision-making practice; rather, it turns on whether it could have done so. *Eadie,* 333 Or at 53. It is true that the accused's letter did not dissuade Toran from asking the arbitrator to "disallow the testimony of these witnesses by telephone."[1] But it could have dissuaded her, and that is sufficient to establish materiality.

I would hold that the accused misrepresented the arbitrator's ruling to Toran in violation of DR 1-102(A)(3). Accordingly, I respectfully dissent from that part of the majority's decision.

Gillette and Balmer, JJ., join in this opinion.

---

[1] Toran testified that she understood from the accused's letter that the arbitrator had ruled that the witnesses could testify by telephone. Her use of the word "disallow" in her letter to the arbitrator is consistent with that testimony.