Argued and submitted April 29, 1997, accused suspended from the practice of law for 120 days March 5, 1998

In re Complaint as to the Conduct of

## GRETCHEN R. MORRIS,
*Accused.*

(OSB 94-11; SC S43700)

953 P2d 387

Jacob Tanzer, Portland, argued the cause and filed the briefs for the accused.

Mary A. Cooper, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Graber, Durham, and Kulongoski, Justices.*

PER CURIAM

---

* Fadeley, J., retired January 31, 1998, and did not participate in this decision.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (the Bar) charges the accused with violating the following disciplinary rules (DRs) and statute:

1. DR 1-102(A)(3) (conduct involving dishonesty, fraud, deceit or misrepresentation);

2. DR 1-102(A)(4) (conduct prejudicial to the administration of justice);

3. DR 7-102(A)(5) (in lawyer's representation of a client, knowingly making a false statement of law or fact);

4. DR 5-105(E) (representing multiple current clients when such representation would result in an actual or likely conflict); and

5. ORS 9.527(4) (willful deceit or misconduct).

A trial panel found the accused guilty of violating all the foregoing rules and the statute. It imposed a suspension of nine months. The accused seeks review of that decision in this court, arguing that she is not guilty of the charged violations and that, even if she were guilty of any violations, the sanction is too severe. The Bar also seeks review, arguing that the seriousness of the accused's misconduct calls for a suspension of at least one year.

For the reasons that follow, we find the accused guilty of the charges of engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, DR 1-102(A)(3); knowingly making a false representation, DR 7-102(A)(5); conduct prejudicial to the administration of justice, DR 1-102(A)(4); and of knowingly representing multiple clients whose positions potentially were adverse, DR 5-105(E). With respect to those offenses, we suspend the accused from the practice of law for 120 days.

The parties entered into a factual stipulation that was received by the trial panel. Based on that stipulation and on the other evidence heard by the trial panel, we find the following facts to have been proved by clear and convincing evidence:[1]

---

[1] Our recitation of the facts is borrowed in major respects from the trial panel's opinion.

Claire E. Whiteman died intestate in Benton County on September 5, 1989, leaving as his heirs a daughter, June Powell, sons Richard Whiteman and Clare N. Whiteman, and the children of a deceased son. Powell retained the accused to petition for Powell's appointment as personal representative of the estate. Powell was appointed, and letters of administration issued. Heirs Richard Whiteman and Clare N. Whiteman retained a Portland lawyer, Francis Harrington, to represent them with respect to their interests in the estate. Powell did not get along with her brothers, which made her service as personal representative difficult.

The difficulties among the siblings led to several legal proceedings. On December 27, 1989, Harrington filed a petition to remove Powell as personal representative. On December 29, 1989, Harrington filed objections to the prospective sale of certain real property that Powell claimed as her own, but that her brothers claimed belonged to the estate. On April 3, 1990, Harrington filed objections to the purchase of estate personal property by Powell without the consent of all interested parties. Finally, on August 23, 1990, Harrington filed a petition for imposition of a trust on assets under Powell's control that had been owned by the decedent at the time of his death.

The accused associated the Corvallis law firm of Ringo and Stuber as co-counsel for the personal representative with respect to the trial of the foregoing issues. After that trial, the probate judge rendered an oral decision with respect to the petition for removal of Powell as personal representative:

"I do feel that [it] would be best if Mrs. Powell did not continue as the personal representative and that a successor personal representative bring the estate to a closing. I would have no problem with [the accused], you know, continuing as the attorney of the— of the estate, but that would end up being a decision of the successor personal representative * * *."

Although the probate court had suggested that it wished to have a successor personal representative appointed, the matter languished for some time. The court did not appoint a successor until February 1992, when it

issued its written findings of fact, conclusions of law, and order removing Powell as personal representative and appointing Donald Michael as successor personal representative. During 1991, the accused continued to represent Powell as personal representative in connection with estate matters, such as the sale of estate assets, accounting for estate income, and the like.

After Michael was informed by letter of his appointment, he met personally with the judge, who outlined Michael's duties and discussed whom Michael might select as his lawyer. The judge suggested that Michael consider selecting the accused because of her familiarity with the estate. Following a meeting with the accused, Michael selected her to serve as his lawyer in his capacity as successor personal representative.

The outstanding estate matters were concluded by the end of 1992. On November 21, 1992, the accused received a letter from Powell seeking compensation from the estate for her services as personal representative. In that letter, Powell stated that she wanted to "submit a bill to the estate to be reimbursed for my attorney fees for allegations brought against me while I was personal representative for the estate in the amount of $20,562.80"—the amount that Powell personally had paid to Ringo and Stuber with respect to their representation of her on the various matters raised by her brothers.

In response to Powell's November 21, 1992, letter, the accused prepared an affidavit in support of Powell's request for personal representative's fees for the period during which Powell had held that position. The accused also prepared for Powell a second set of documents, consisting of a request for reimbursement of the Ringo and Stuber fees, supported by a separate affidavit. Powell executed both affidavits. On March 2, 1993, the accused prepared a motion regarding Powell's request for reimbursement of attorney fees, together with the pertinent supporting affidavit. The accused served Michael, Harrington, Ringo, and the heirs with that motion. The accused did not call the matter to Michael's attention, however. At no time after receiving Powell's November 1992 letter did the accused directly

discuss Powell's request for reimbursement of attorney fees with Michael.

Before March 2, 1993, the accused already had completed a final account and petition for a decree of final distribution. She mailed both documents to Michael, who resided in West Linn. As required by ORS 116.083, Michael verified the final account by signing it before a notary on March 3, 1993. He returned the documents to the accused with a cover letter dated March 5, 1993; they were received in the accused's office on March 8, 1993.

After she had received the executed final account and petition for decree for final distribution from Michael, the accused realized that the final account made no reference to the unresolved issue of Powell's request for reimbursement of attorney fees. She concluded that some reference to that issue needed to be included in the final account. She also determined that she had underestimated her own attorney fees.

On March 9 or 10, 1993, the accused had her secretary, Marge Bromley, make certain changes to the second page of the final account. Those changes included altering, in part, the format of certain information, as well as a change in the amount sought for her own attorney fees. In addition to those changes, the accused had inserted on page 3 of the final account, which listed "remaining expenses of administration which should be paid out of the estate," the following entry: "claim-June Powell (reimb. of atty. fees) $20,562.80." A conforming adjustment was made to the "total" of such expenses, from "$18,005.75" to "$38,568.55."

Bromley pointed out to the accused that the final account already had been signed. The accused told Bromley that she would speak to Michael about it. The accused telephoned Michael on March 10, 1993, concerning her underestimate of her own fee and requested and obtained Michael's approval to increase her attorney fee. She did not mention the Powell petition for reimbursement; she did not obtain approval for the change in the final account respecting that issue.

There is no direct evidence as to what, if anything, the accused told Bromley after filing the altered document with the probate court. However, the altered final account and petition for decree of final distribution, together with an affidavit of mailing, a notice for filing objections to the final account and petition for distribution, and a revised affidavit of attorney fees, were mailed to the probate court for filing on that day—March 10, 1993. All the documents but the final account were signed by the accused on that same day.

A file copy of the revised final account also was mailed to Michael, who did not read it, but put it in his file. Michael also received, but did not read, a cover letter from Bromley that was sent to him with an application for a release of Oregon income taxes. Bromley's letter included the following postscript: "[W]e did make a change in the Final Account (after you sent it back to us) to include June Powell's reimbursement of attorney fees. ([S]ee pg. 3 of account)."

After receiving the March 2, 1993, motion regarding Powell's request for reimbursement of the Ringo and Stuber attorney fees, which the accused had prepared, Harrington filed objections to allowance of the final account and petition for final distribution. He contended that the Ringo and Stuber attorney fee was Powell's personal expense and, therefore, not properly chargeable to the estate. The accused had expected Harrington to make that objection. The accused then contacted Ringo, did legal research, and prepared notes on how to establish at the forthcoming hearing that the attorney fee that Powell paid to Ringo and Stuber was reasonable. All those efforts were designed to benefit Powell.

A hearing on the objections to the final account was held on June 9, 1993. At that hearing, the accused appeared for the estate, and Harrington appeared for the objectors. However, the accused also filed a trial memorandum on behalf of Powell.

Harrington called Michael as a witness on behalf of the objectors. Michael identified a copy of the final account that he had signed. It became clear that there was a discrepancy between that account and the one that the accused had filed with the court (and to which Harrington's clients had

objected). The accused could not then explain the discrepancy. When the discrepancy was called to Michael's attention, the accused stipulated that Michael had received a copy of the final account that did not include Powell's claim for attorney fees.

Michael testified at the hearing that he did not intend to approve the reimbursement to Powell of the Ringo and Stuber attorney fee, because that transaction had occurred before he was involved in the estate and he would not approve such an expenditure without knowing its background or history. He did not have such information.

The accused then questioned Michael. She apologized to Michael "for what obviously was a lack of communication." She also said that she did not have any correspondence file with her at the hearing and that she could not, at that moment, explain what had happened. The accused stated that she understood that Michael's objection was that he did not have any information about the merits of Powell's claim. Michael answered, "Not at all." When the accused asked Michael whether he might have allowed the claim if he received the information and found it to be satisfactory, he answered, "I probably would not have." When the accused invited him to explain, Michael said that he had had another encounter with a lawyer from the Ringo and Stuber firm in connection with the case and that his feelings toward the firm were not warm.

After hearing the testimony, the probate judge said that he thought that Michael's position on Powell's claim for attorney fees was similar to the court's own position, *i.e.*, the court doubted whether it would be appropriate for a personal representative to charge the estate for attorney fees when the issues with respect to which those fees were paid involved Powell's personal claim to certain property. The judge recalled that the parties and he had discussed those attorney fees in the past and had left to the final account the determination whether Powell was entitled to any reimbursement for them. The judge then took the matter under advisement.

On July 26, 1993, the probate court denied Powell's claim for reimbursement of the Ringo and Stuber attorney fees. The accused thereafter completed a revised final

account and petitioned for a decree of final distribution, which was granted. The estate was closed.

We turn to the charges as to which the trial panel found the accused guilty.

It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. DR 1-102(A)(3). It also is professional misconduct for a lawyer to knowingly make a false statement of fact in representation of a client. DR 7-102(A)(5). Further, this court may sanction a lawyer if the lawyer engages in willful deceit or misconduct in the legal profession. ORS 9.527(4).

The trial panel found that, by directing her legal assistant to alter a final account that already had been signed and notarized, and then filing it with the probate court, the accused misrepresented to the court and to the adverse parties, on whom she served the final account, that the personal representative had approved that document. The panel opined:

> "It is not necessary that the Accused must have acted with intent to injure or defraud because no such intent is required[,] so long as the accused lawyer knew that the alteration and filing as altered [were] not authorized. *In re Booth*, 303 Or [643,] 652[, 740 P2d 785 (1987)]."

We understand the trial panel to mean that, in order to be guilty of violating DR 1-102(A)(3), DR 7-102(A)(5), and ORS 9.527(4), the accused must have acted at least with a knowing state of mind. With respect to DR 1-102(A)(3) and 7-102(A)(5), that formulation is correct. *See* DR 7-102(A)(5) (prohibiting knowing false statements); *In re Jones*, 326 Or 195, 198, 951 P2d 149 (1997) (stating that DR 1-102(A)(3) "requires, at the least, that a lawyer *knowingly* engage in a misrepresentation" (emphasis in original). However, it is apparent from the text of ORS 9.527(4), which prohibits a lawyer from engaging in *"willful* deceit or misconduct in the legal profession,"* that a lawyer must act intentionally or willfully to be subject to discipline under that statute.

For the reasons that follow, we agree with the trial panel that the timing of the events surrounding the filing of the altered final account establishes that the accused knew

that she was filing an altered and misleading document with the court:

> By virtue of her substantial expertise in the area of probate law, the accused knew that, under ORS 116.093(1), she must file the Affidavit and the Notice either contemporaneously with or after the filing of the final account. Given the fact that the accused had spoken to Michael about revising the final account the very day that it was filed, she could not have believed either that the final account already had been filed or that it had been reexecuted by Michael. Moreover, inasmuch as the accused had never discussed with Michael the issue of Powell's claim for reimbursement of her attorney fees, it is not possible that the accused mistakenly thought that she had discussed the matter in her telephone call with him that day.

> The accused asserts that she never saw the final account again, after she gave it to Bromley for revisions. That may be so, but it is not the point. In the light of the timing of the revisions, the phone call, and the filing of the dated Affidavit and Notice (both of which she signed), the accused had to know that she was filing a false final account with the court. We find by clear and convincing evidence that the accused is guilty of knowing conduct involving misrepresentation, in violation of DR 1-102(A)(3) and DR 7-102(A)(5). We do not find, however, that the accused's misconduct violated ORS 9.527(4).[2]

■■ It follows from the foregoing that the accused also is guilty of violating DR 1-102(A)(4), which prohibits lawyers from engaging in conduct prejudicial to the administration of justice. That rule is violated whenever a lawyer's wrongful conduct has the potential to cause harm either to the procedural functioning of a judicial proceeding or to the substantive interest of a party to that proceeding. *In re Claussen*, 322 Or 466, 482, 909 P2d 862 (1996). The accused argues here

---

[2] We find that the accused acted knowingly, because the Bar did not prove that the accused *intended* to deceive the court or the other parties to the litigation. The previous history of the administration of the estate showed that it was virtually certain that Powell's claim for reimbursement for her attorney fees was going to be contested by the other heirs. The accused thus could not have believed that the filing of an altered document would go unnoticed.

again that opposition to Powell's claim for reimbursement was longstanding and well known to the accused and to the probate court. Under those circumstances, she reasons, there was no chance that the misrepresentation would go unnoticed during the course of the judicial proceeding and, therefore, the potential for prejudice either to the procedural functioning of the proceeding or to the substantive interests of any parties to that proceeding was minimal. That argument does not adequately recognize the *potential* harm that the accused's actions could have caused, however. We find the accused guilty of conduct prejudicial to the administration of justice, DR 1-102(A)(4).

■     We turn to the charge that the accused represented multiple clients in circumstances in which the interests of those clients were in conflict. The Bar alleges that the accused violated DR 5-105(E), which provides that, with an exception not pertinent here, a lawyer shall not represent multiple current clients in a matter, when such representation would result in an actual or likely conflict. On March 2, 1993, the accused filed a motion and an affidavit in support of the personal representative's request for reimbursement of attorney fees that she had prepared on behalf of Powell, requesting reimbursement for the $20,562.80 that Powell had paid attorney Ringo and Stuber. The accused styled herself "Attorney for Personal Representative" on the certificate of mailing. The accused did not discuss with Michael her current efforts on behalf of Powell.

The accused then proceeded to represent Powell during the hearing on objections and submitted two trial memoranda on Powell's behalf. She questioned Michael during the course of the hearing in a manner that was designed to further Powell's claim at the expense of Michael's assessment of the estate's interest in the matter. As the trial panel recognized, "Michael ended up on the witness stand without any attorney representing him."

In choosing to assist Powell in pursuing a claim against the estate for attorney fees, while at the same time continuing to be responsible for representing Michael, the personal representative, the accused had an actual current

conflict of interest. We find by clear and convincing evidence that the accused is guilty of violating DR 5-105(E).

■ We turn to the issue of sanction. This court looks to the ABA *Model Standards for Imposing Lawyer Sanctions* (1991) (ABA Standards) for guidance in setting an appropriate sanction in a lawyer discipline case. *In re Jeffery*, 321 Or 360, 374, 898 P2d 752 (1995). Under the ABA Standards, this court addresses the duty violated, the mental state involved, the injury (if any) that resulted, and any aggravating or mitigating factors. *Id.*; ABA Standard 3.0.

In the present case, the accused violated the duty of candor owed to Michael by altering a document, the accuracy of which Michael already had verified before a notary, without obtaining Michael's consent to make that alteration, and by filing that document. *See* ABA Standard 4.6 (discussing that duty). The accused's misconduct in filing the altered final account created the potential for substantial injury to her client, Michael, and to the court. Michael was put at risk of liability to the other heirs for approving a reimbursement claim that he did not believe was properly reimbursable by the estate, and there was a risk, albeit a smaller one, that the court would be misled by the deceptive final account.

The accused also violated her duty to the legal system by filing the misleading document. *See* ABA Standard 6.1 (discussing that duty). Additionally, by simultaneously representing both Michael and Powell, the accused violated the duty owed to each of her clients to avoid conflicts of interest, thereby assuring each the complete advocacy to which that client was entitled. The accused's simultaneous representation of both clients created a substantial risk that one or both would not be represented fully. *See* ABA Standard 4.3 (discussing that duty).

The accused acted knowingly with respect to each of the violations found herein. ABA Standards at 7 (defining "knowledge" as the "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective" to achieve a particular result).

The accused caused harm to the administration of justice by creating circumstances requiring an ancillary

inquiry with respect to what her client had agreed to in the final account. She caused potential harm to her client, because her client, Michael, could have been personally liable for improperly distributing assets of the estate. *See* ORS 116.063(3)(g) (personal representatives may be liable for certain administrative acts that cause loss to the estate). She also caused harm to Michael through her divided loyalty.

At this point, and without consideration of aggravating or mitigating factors, the ABA Standards provide that a suspension would be appropriate. *See* ABA Standard 4.62 (suspension is appropriate when a lawyer knowingly deceives a client and causes injury or potential injury to that client); ABA Standard 6.12 (suspension is appropriate when a lawyer knows that a false document is being submitted to the court and takes no remedial action, and causes injury or potential injury to a party in the legal proceeding); ABA Standard 4.32 (suspension is appropriate when a lawyer knows of a conflict of interest, does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client). We turn to the aggravating and mitigating factors.

We find two aggravating factors: ABA Standard 9.22(d) (multiple offenses); and ABA Standard 9.22(i) (substantial experience in the practice of law). Mitigating factors are the absence of a prior disciplinary record (ABA Standard 9.32(a)), a cooperative attitude toward the disciplinary proceedings (ABA Standard 9.32(e)), and good character or reputation (ABA Standard 9.32(g)). The record, particularly that portion pertaining to the accused's character and reputation, causes us to conclude that the mitigating factors significantly outweigh the aggravating factors.

The remaining consideration is this court's case law. *See Jeffery*, 321 Or at 375-76 (illustrating progression in analysis). This court recently considered the appropriate sanction when a lawyer knowingly engages in conduct involving dishonesty, fraud, deceit or misrepresentation in *Jones*. That case involved a lawyer who had his client sign bankruptcy documents in blank and, notwithstanding the existence of perjury clauses on those documents, completed

and filed them with the Bankruptcy Court on behalf of his client. We held in that case that, without consideration of the aggravating factor of the accused's prior disciplinary record, a 45-day suspension was appropriate. *Jones*, 326 Or at 202.

Addressing the appropriate sanction for a conflict of interest violation, this court previously has held that a single "violation of the conflicts rule * * * would justify a 30-day suspension." *In re Hockett*, 303 Or 150, 164, 734 P2d 877 (1987).

In the present case, the accused is guilty of a number of violations, including the violation of the conflict of interest rules. That violation was both obvious and serious. The accused filed two memoranda on behalf of her former client, Powell, and then engaged in questioning her current client, Michael, all with the aim of securing a benefit for Powell to which Michael had not agreed. The accused's actions in this case thus are more serious than those referred to in *Hockett*.

The trial panel described the accused's behavior as "inexplicable." That term is apt. But our difficulty in understanding *why* the accused did what she did does not alter the fact that she is guilty of several significant violations of the disciplinary rules. After considering all the factors involved, we conclude that an appropriate sanction is a 120-day suspension.

The accused is suspended from the practice of law for a period of 120 days commencing on the effective date of this decision.