Filed:  June 30, 2011

IN THE SUPREME COURT OF THE STATE OF OREGON

In Re:

Complaint as to the Conduct of

J. MARK LAWRENCE,

Accused.

(OSB 08-115; SC S058778)

En Banc

On review of the decision of a trial panel of the Disciplinary Board.

Argued and submitted May 2, 2011.

Paula Lawrence, McMinnville, argued and cause and filed the briefs for accused.

Stacy Hankin, Assistant Disciplinary Counsel, Tigard, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM

The complaint is dismissed.

PER CURIAM

The issue in this lawyer disciplinary proceeding is whether the accused, by releasing a partial transcript of a juvenile hearing to the press, violated Rule of Professional Conduct (RPC) 8.4(a)(4), which prohibits a lawyer from engaging in conduct that is prejudicial to the administration of justice.  A trial panel found the accused guilty of violating RPC 8.4(a)(4) and suspended him for 60 days.  We review the decision of the trial panel *de novo*.  ORS 9.536(2); BR 10.6.  Because we conclude that

the Bar failed to prove by clear and convincing evidence that the accused's conduct caused prejudice to the administration of justice, we dismiss the complaint.

The facts are straightforward and largely undisputed. In 2007, the accused represented a juvenile male who, along with another male friend, allegedly had touched or swatted several female classmates on the buttocks and had danced in front of the females in a lascivious manner. The incident occurred at the students' middle school. After being informed of the youths' behavior, the vice principal and a police officer interviewed the victims. Based on those interviews, the accused's client and his friend were arrested by a McMinnville Police Officer on February 22, 2007. On February 23, the Yamhill County Juvenile Department filed a delinquency petition alleging that the accused's client had committed acts that, if done by an adult, would have constituted five counts of first-degree sexual abuse and five counts of third-degree sexual abuse. At an initial detention hearing that same day, the court ordered the youths to remain in custody.

The events giving rise to this disciplinary action arose out of a second detention hearing held on February 27, 2007, before Judge John Collins. The accused called two of the victims to testify on behalf of his client. The female victims testified that the youths were their friends and that they did not find the youths to be threatening in any way. Regarding the alleged sexual abuse, the female victims testified that the touching or swatting was not sexual in nature but rather was mere horseplay. The victims also testified that they felt pressured by the vice principal and the police officer to make the touching sound hurtful and uncomfortable when it was not.

By the second detention hearing, the case was receiving substantial media

2

attention. Judge Collins allowed the press to attend the detention hearing, but prohibited the press from recording the proceedings. The parties dispute whether the judge prohibited only video recordings or also prohibited audio recordings.[1] A number of newspaper and television stories reported the events and testimony at the hearing. After the hearing, the accused obtained a copy of the official audio recording of the hearing and had a partial transcript prepared that contained the victims' testimony.

In March 2007, a reporter contacted the accused about the February 27 hearing. The reporter, who was not present at the hearing, expressed disbelief that the female victims had felt pressured by the vice principal and the police officer to make the youths' actions seem sexual. The accused offered to give the reporter a copy of the partial transcript when it was available. The accused believed that it would have been improper to give the reporter the official audio recording of the hearing but thought that the transcript could be released. The accused contacted Deborah Markham, the deputy district attorney handling the case, to see if she objected to releasing the transcript. Markham told the accused that she believed that the court would have to consent. The accused then released the transcript to the reporter without obtaining permission from Judge Collins.

---

[1] Deputy District Attorney Deborah Markham testified that Judge Collins prohibited video recording. Judge Collins testified that he might have prohibited the press from recording the detention hearing, but that he did not remember whether he did so or not. He did remember allowing video recording at a later hearing in the proceeding. The accused testified that Judge Collins prohibited video recording but that he could not remember if the judge prohibited audio recording.

When Judge Collins learned that the transcript had been released -- following news reports that cited the transcript -- he called a meeting with Markham and the accused and told them to release no other transcripts. The testimony from the accused, Markham, and Judge Collins differs regarding that meeting. The accused described the meeting as relaxed and said that Judge Collins had stated that the release of the transcript was permissible. Markham testified that Judge Collins was "very concerned" about the release of the transcript and that Judge Collins said that the accused's disclosure violated the law. Judge Collins testified that the accused did not get his consent to release the transcript, but that he was not sure if the accused needed to do so under the circumstances of the case, particularly given the presence of the press at the hearing. In Judge Collins's description, the meeting was not contentious; although he requested that the parties refrain from releasing any additional transcripts, he did not "feel like [he] needed to be firm" and so did not issue an order barring further releases.

In April 2008, several months after the juvenile case was resolved, Tim Loewen, director of the Yamhill County Juvenile Department, reported the accused's action of releasing the transcript to the Bar. After investigating the matter, the Bar charged the accused with violating RPC 8.4(a)(4)[2] by releasing to the press "information

---

[2] RPC 8.4(a) provides, in relevant part:

"It is professional misconduct for a lawyer to:

"* * * * *

"(4) engage in conduct that is prejudicial to the administration of

4

appearing in the record" of a juvenile case without court consent, in violation of ORS

419A.255(1) and (3).[3]  The Bar alleged that the accused had "usurped" Judge Collins's

authority to control the proceeding by not seeking the court's consent before releasing the

transcript, and thereby had caused prejudice to the administration of justice.

In the proceeding before the trial panel, the accused argued that his release

of the transcript did not violate ORS 419A.255 for each of three independent reasons: (1)

the transcript that he had prepared was not a part of the record of the case and so was not

subject to ORS 419A.255; (2) Judge Collins had consented to the release of the

information contained in the transcript when he allowed the press to attend and report on

justice[.]"

[3]    ORS 419A.255 provides, in relevant part:

"(1) The clerk of the court shall keep a record of each case, including therein the summons and other process, the petition and all other papers in the nature of pleadings, motions, orders of the court and other papers filed with the court, but excluding reports and other material relating to the child, ward, youth or youth offender's history and prognosis.  The record of the case shall be withheld from public inspection but is open to inspection by the child, ward, youth, youth offender, parent, guardian, court appointed special advocate, surrogate or a person allowed to intervene in a proceeding involving the child, ward, youth or youth offender, and their attorneys.  The attorneys are entitled to copies of the record of the case.

"* * * * *

"(3) Except as otherwise provided in subsection (7) of this section, no information appearing in the record of the case or in reports or other material relating to the child, ward, youth or youth offender's history or prognosis may be disclosed to any person not described in subsection (2) of this section without the consent of the court * * * ."

5

the hearing; and (3) the information in the transcript could be released under ORS 419A.255(5)(b) and (d), which list certain exceptions to the confidentiality of juvenile records. Even assuming that he did violate ORS 419A.255, the accused asserted, he did not violate RPC 8.4(a)(4), because his conduct was not prejudicial to the administration of justice. That was so, according to the accused, because the defendant and the victims supported releasing the transcript and because the information contained in the transcript had already been made public as a result of the press attending and reporting on the hearing. Thus, in the accused's view, no harm -- actual or potential -- resulted from his conduct.

The trial panel found by clear and convincing evidence that the accused had violated RPC 8.4(a)(4) and suspended the accused from the practice of law for 60 days. The trial panel first determined that ORS 419A.255(3) prohibited the accused from releasing the partial transcript to the press without the consent of the trial court and that the accused had violated the statute in doing so. With little discussion, the trial panel then found that the evidence that the accused had violated the statute also was sufficient to show prejudice to the administration of justice and thus that the accused had violated RPC 8.4(a)(4). The accused sought review in this court.

To prove a violation of RPC 8.4(a)(4), the Bar must prove (1) that the accused lawyer's action or inaction was improper; (2) that the accused lawyer's conduct occurred during the course of a judicial proceeding; and (3) that the accused lawyer's conduct had or could have had a prejudicial effect upon the administration of justice. *See In re Kluge*, 335 Or 326, 345, 66 P3d 492 (2003) (citing *In re Haws*, 310 Or 741, 746-48,

6

801 P2d 818 (1990)) (so stating for identically worded *former* DR 1-102(A)(4)).  Because we find the issue to be dispositive, we begin by examining the third element -- whether the accused's conduct had or could have had a prejudicial effect on the administration of justice -- and assume, without deciding, that the accused's conduct violated ORS 419A.255(3) and otherwise satisfied the test set out in *Kluge* and *Haws*.

Prejudice to the administration of justice "may arise from several acts that cause some harm or a single act that causes substantial harm to the administration of justice." *Kluge*, 335 Or at 345.  This court has identified two components to the "administration" of justice:  "1) The procedural functioning of the proceeding; and 2) the substantive interest of a party in the proceeding."  *Haws*, 310 Or at 747.  "A lawyer's conduct could have a prejudicial effect on either component or both."  *Id*.

The Bar argues that the accused's conduct, a single act, resulted in prejudice to the administration of justice because it had the potential to cause substantial harm to the procedural functioning of the court.  The Bar asserts, "Substantial potential harm to the administration of justice occurs whenever a lawyer interferes in or usurps the court's ability to do its job in a proceeding pending before it."  The Bar states that the accused "usurped" the court's authority by not seeking Judge Collins's consent prior to releasing the transcript.

The Bar cites three disciplinary cases to support its position that the accused's conduct resulted in substantial potential harm to the administration of justice. First, in *In re Eadie*, 333 Or 42, 36 P3d 468 (2001), this court found a violation of *former* DR 1-102(A)(4) where the accused lawyer submitted a proposed order containing a

7

misrepresentation that was intended to influence the judge in changing the trial date. *Id*. at 58. That conduct substantially harmed the procedural functioning of the court because it resulted in the judge acquiescing to a trial date preferred by the accused and made it necessary for the judge to resolve a dispute resulting from the accused's misrepresentation and to redraft an order. *Id*. Second, in *In re Morris*, 326 Or 493, 953 P2d 387 (1998), this court concluded that the accused lawyer had engaged in a single act of conduct that had the potential to cause substantial harm, either to the procedural functioning of the court or to the substantive interests of the parties, when she knowingly filed a notarized document that she had altered. *Id*. at 502-03. Third, in *In re Thompson*, 325 Or 467, 940 P2d 512 (1997), this court found a violation of *former* DR 1-102(A)(4) where the accused lawyer physically confronted a judge after receiving an adverse decision. That conduct caused substantial harm to the administration of justice because the accused's *ex parte* communication with the judge "unfairly attack[ed] the independence, integrity, and respect due a member of the judiciary." *Id*. at 475. The conduct also had the potential to cause substantial harm, because it could have influenced the judge to change her decision or to recuse herself from the case. *Id*.

In each of the preceding cases, the accused lawyer engaged in conduct that had the potential to disrupt or to improperly influence the court's decision-making process, *Thompson*, 325 Or at 475; that created unnecessary work for the court, *Eadie*, 333 Or at 58; or that had the potential to mislead the court, *Morris*, 326 Or at 503. Moreover, in *Eadie* and *Morris*, the accused lawyers made knowing misrepresentations to the court. Similarly, in *Kluge*, the accused lawyer's conduct in knowingly filing an

8

untimely motion to disqualify the trial judge and then failing to serve the motion on opposing counsel caused prejudice to "the procedural functioning of the judicial system by imposing a substantial burden upon both opposing counsel and [the trial judge] to undo the accused's actions." 335 Or at 346.

In this case, the Bar has made no showing, as required by *Kluge* and *Haws*, that the accused's conduct harmed the procedural functioning of the judicial system, either by disrupting or improperly influencing the court's decision-making process or by creating unnecessary work or imposing a substantial burden on the court or the opposing party. Nor has the Bar shown that his conduct had the potential to result in any of the above. Certainly, Judge Collins did not testify that the accused's actions interfered with Judge Collins's conduct of the juvenile proceeding. Although the Bar correctly asserts that ORS 419A.255 gives the trial court control over the release of protected information in a juvenile record -- and, as noted, we assume without deciding that the accused acted improperly in not seeking the trial court's consent -- the Bar's theory fails to take into account the fact that the information contained in the partial transcript that the accused released was presented in open court and had already been reported by the press.[4] It is difficult to see how the accused's release of the same information, in the context of this case, had the potential to cause any harm to the proceeding, much less substantial harm.

---

[4] Article I, section 10, of the Oregon Constitution grants members of the public, including the press, the right to attend juvenile hearings. *State ex rel Oregonian Pub. Co. v. Deiz*, 289 Or 277, 284-85, 613 P2d 23 (1980).

*See Kluge*, 335 Or at 345 (prejudice to the administration of justice may arise from "several acts that cause some harm or a single act that causes substantial harm"). Indeed, the Bar makes no effort to show that the accused's conduct could have resulted in new information being made public or that the release of the partial transcript itself had any potential impact on the proceeding. In fact, after the press attended the hearing and the accused released the transcript, Judge Collins allowed members of the press to listen to the official audio recording of the hearing.

Nevertheless, the Bar asserts that Judge Collins was sufficiently "concerned" about the release of the information to call the accused and Markham to his chambers to discuss the incident. The fact that Judge Collins was "concerned" and met with the accused and Markham does not, by itself, demonstrate the potential for substantial harm to the procedural functioning of the court. Judge Collins himself stated that, although "in a perfect world," he probably would not have wanted the transcript released, in the context of this case and the open court provision of Article I, section 10, of the Oregon Constitution, the release of the partial transcript was likely permissible without his consent because "if [the press is] * * * going to know the information and report the information, at least get it right." Judge Collins's testimony, then, does not demonstrate that the accused's conduct impacted the procedural functioning of the court, even if the accused's conduct was cause for "concern."

Nor does the Bar offer any evidence to prove that the release of the partial transcript harmed the substantive interests of the accused's client, the victims, or the state. The accused released the transcript, with the support of his client, in response to an

10

inquiry from the media and in order to respond to inaccuracies appearing in some media reports. The accused maintained the confidentiality of the victims' names in the transcript, referring to them by their initials, consistent with an earlier order by Judge Collins. In this proceeding, the accused also submitted letters from the two victims who testified (and their parents) that stated their support for the release of the partial transcript. Finally, there was no testimony from the Yamhill County Juvenile Department that the release of the partial transcript had any effect on its substantive interests or its ability to prosecute the case.

The Bar appears, instead, to take the position that virtually any violation of a statute, rule, or court order that occurs during the course of a court proceeding and relates to the conduct or any procedural aspect of that proceeding necessarily is prejudicial to the administration of justice. The Bar asserts, in effect, that "substantial potential" harm is implicit in the accused's conduct. Our cases, however, require proof by clear and convincing evidence that an accused's conduct in a specific judicial proceeding caused actual or potential harm to the administration of justice and, when only one wrongful act is charged, that actual or potential harm must be "substantial." *Kluge*, 335 Or at 345; *Haws*, 310 Or at 748. Here, the Bar's evidence did not prove that substantial harm resulted or could have resulted from the accused's conduct.

We conclude that the Bar has not proved by clear and convincing evidence that the accused violated RPC 8.4(a)(4). The accused's conduct did not result in such prejudice, because there is no evidence that the release of the partial transcript, which contained solely information already presented in open court and reported by the press,

11

harmed the procedural functioning of the judicial system.  Nor is there any evidence that the substantive rights of the accused's client, the other juvenile defendant, the victims, or the state were harmed.  "Prejudice to the administration of justice" requires such a showing.  *Haws*, 310 Or at 747-48.

The complaint is dismissed.