PER CURIAM
**191 In this lawyer discipline case, the Oregon State Bar charged Steven L. Maurer, a retired judge who is now a practicing lawyer, with violating two disciplinary rules: (1) RPC 1.12(a), which prohibits a lawyer from representing *412 a person in connection with a matter in which the lawyer participated personally and substantially as a judge without the informed written consent of all parties; and (2) RPC 8.4(a)(4), which prohibits conduct prejudicial to the administration of justice. A trial panel of the Disciplinary Board conducted a hearing and found that respondent had not committed the charged offenses, because the proceeding in which he represented his client as a lawyer was not the same matter in which he had participated as a judge. For the reasons that follow, we find that respondent's conduct violated RPC 1.12(a), that it did not violate RPC 8.4(a)(4), and that the appropriate sanction for respondent's misconduct is a 30-day suspension from the practice of law.
We review decisions of the trial panel de novo . ORS 9.536(2) ; BR 10.6. We find the following facts by clear and convincing evidence. BR 5.2 (Bar has burden of establishing alleged misconduct by clear and convincing evidence).
I. FACTUAL OVERVIEW
From 2007 to 2008, respondent, then the Presiding Judge of the Clackamas County Circuit Court, presided over the dissolution of the marriage of husband and wife.[1] The dissolution proceeding was acrimonious, and, at one point, wife accused husband of sexually abusing the couple's daughter. She did not provide proof of that allegation, and DHS determined that the allegation was unfounded. Respondent agreed and ordered wife to undergo a mental health evaluation and treatment. Ultimately, however, respondent issued a general judgment in September 2008, ordering the couple's daughter to be placed in wife's legal and physical custody. The judgment included a parenting plan that provided for regular, consistent, unsupervised visitation with husband **192 and included various conditions. Respondent later issued orders in a modification proceeding between the parties in 2011.
Respondent retired from the bench in February 2013 and returned to private practice in Lake Oswego.
In February 2014, wife and husband appeared in Clackamas County Circuit Court before Judge Anderly to address wife's concern that the daughter's pet allergies were inflamed during her visitation with husband. Both wife and husband were unrepresented in that proceeding. At the conclusion of the hearing, Judge Anderly issued an order stating that "both parents shall immediately take action to reduce and eliminate the child's exposure to dogs and cats when she is in their care."
In April 2015, wife moved pro se for an order requiring husband to show cause why he should not be held in contempt for failing to comply with the February 2014 order. Wife alleged, among other things, that husband still had a cat that was causing the daughter to have allergic reactions. Wife also requested an order requiring husband to pay $80,000 for the child's loss of "health and well-being" and requiring previsitation home inspections to ensure there were no cats in or around the house. Husband retained respondent to represent him in that contempt proceeding.
In June 2015, respondent communicated with wife to reschedule the contempt hearing. He identified himself as a retired judge, but he did not mention that he was the judge who had presided over wife's and husband's dissolution proceeding. Respondent neither requested nor received consent in writing from wife to represent husband in the contempt matter. As respondent later explained to the Bar, he had determined that no such consent was required, because (1) the contempt matter was brought under ORS chapter 33 and was a separate matter from the dissolution proceeding brought under ORS chapter 107 seven years earlier; (2) the contempt matter involved new claims and issues presented in a different and narrow legal context; and (3) respondent had not been "personally and **193 substantially" involved in the entry of the February 2014 order addressing the daughter's allergies. Respondent reasoned that there was nothing in the contempt proceeding that required reference to, or examination of, or evaluation of the *413 prior dissolution proceeding. He also concluded that the judge presiding over the contempt proceeding would have no jurisdiction to revisit, reexamine, modify, or seek to enforce any part of respondent's decision as a judge in the underlying dissolution.
In August 2015, respondent appeared in court before Judge Darling on husband's behalf at the hearing on wife's contempt motion. Wife appeared pro se and testified on her own behalf. In respondent's opening remarks, he referred to "the original dissolution back in 2008." Respondent asserted that, in the dissolution proceeding, wife had made accusations of sexual abuse against husband that were determined by DHS and the court to have been unfounded. He argued that the present contempt proceeding was an "outgrowth of that," insofar as the allegation that the child was suffering allergic reactions to husband's cat was "simply made up" and no symptoms had ever been observed by husband, who is a physician. During those remarks, respondent did not mention that he was the judge who had determined that the sexual abuse allegations were unfounded.
Toward the end of wife's case, in which wife attempted to introduce photos taken on the daughter's mobile phone of cats in husband's home, the court engaged in an extended discussion with wife about the proper process for introducing documents into the record. That process included, among other things, handing the documents to respondent for his examination. Wife became upset during that colloquy and began to cry. The court ordered a brief recess for wife to regain her composure. After a few minutes, the hearing resumed.
At the conclusion of the hearing, the court determined that wife had failed to prove that husband was in contempt of the February 2014 order and granted husband's motion to dismiss the contempt charge. In so ruling, the court also rejected wife's request for the sanction of previsitation home inspections for the presence of cats, a remedy **194 that would have required modification of the dissolution judgment, which was not properly before the court.[2]
II. THE CHARGES AGAINST RESPONDENT AND THE TRIAL PANEL'S DECISION
The Bar charged respondent with violating RPC 1.12 and RPC 8.4(a)(4). RPC 1.12(a) provides:
"Except as stated in [parts of the rules not relevant here], a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer or law clerk to such a person or as an arbitrator, mediator or other third-party neutral, unless all parties to the proceeding give informed consent, confirmed in writing."
RPC 8.4(a)(4) provides:
"It is professional misconduct for a lawyer to *** engage in conduct that is prejudicial to the administration of justice[.]"
The Bar argued that respondent violated RPC 1.12(a), because wife's motion to hold husband in contempt was the same "matter" that respondent personally and substantially participated in when he presided over the couple's dissolution. Respondent contended that the contempt proceeding was not the same "matter" as the dissolution because, in the contempt proceeding, wife was seeking to enforce a different judge's ruling on a factual matter unknown to the parties at the time of the dissolution. Respondent argued that the parties in the contempt proceeding did not seek modification of the dissolution judgment and the dissolution proceeding did not address pets or allergies. Therefore, respondent argued, there was no material factual or legal overlap between the two proceedings.
The trial panel agreed with respondent. It acknowledged that the dissolution "matter" involved, among other **195 things, the well-being of the child and, to that end, established a parenting plan, which could be modified *414 in the future, but the trial panel ultimately concluded that
"in no reasonable sense can it be said that a contempt motion for violation of another Judge's Order concerning allergies not at issue and unknown to the Court in the divorce proceedings constitutes the same 'matter.' "
For that reason, the trial panel ruled that respondent had not violated RPC 1.12(a). And, because the Bar's argument that respondent had engaged in conduct prejudicial to the administration of justice in violation of RPC 8.4(a)(4) was solely based on the rejected contention that respondent had violated RPC 1.12(a), the trial panel also concluded that respondent had not violated RPC 8.4(a)(4).
The Bar seeks review of the trial panel's determination that respondent did not violate either rule.
III. ANALYSIS
As noted, RPC 1.12(a) provides that "a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge[.]" All parties agree that respondent participated personally and substantially as a judge in husband's and wife's marital dissolution proceeding. Thus, whether respondent violated RPC 1.12(a) turns on whether his representation of husband in the contempt proceeding was "in connection with" the matter-the dissolution proceeding-that he had participated in as a judge.
In answering that question, the parties focus on the definition of "matter." The Rules of Professional Conduct define "matter" as follows:
" 'Matter' includes any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties; and any other matter covered by the conflict of interest rules of a government agency."
RPC 1.0(i). The Bar contends that the contempt hearing and the dissolution trial were parts of the same matter, insofar **196 as they presented common issues of law and fact, had the same case number, and involved the same parties, and the contempt proceeding grew out of authority derived from respondent's original ruling in the dissolution proceeding. The Bar alternatively contends that the term "matter" in RPC 1.12(a) should be interpreted to mean what that term means in RPC 1.9(a), which deals with a lawyer's duties to former clients and, for conflicts purposes, requires only that matters be "substantially related." RPC 1.9(a) provides:
"A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless each affected client gives informed consent, confirmed in writing."
The Bar argues that, because parenting was an issue in both the underlying dissolution and the subsequent contempt hearing, the two matters were substantially related and, therefore, the accused violated RPC 1.12(a).
Respondent counters that the dissolution proceeding and the contempt proceeding were not the same matter. That is so, in respondent's view, because the two proceedings had separate and distinct purposes, they were brought under different statutes, the facts in each proceeding were different, and the contempt proceeding arose out of another judge's order in a proceeding in which respondent did not participate personally and substantially.
The parties' arguments thus involve a parsing of the characteristics and context of the dissolution proceeding and the contempt proceeding to determine whether they were the same matter. We conclude that the parties' focus on whether the dissolution proceeding and the contempt proceeding were the same matter for purposes of RPC 1.12(a) is misplaced. The narrow examination into what is a "matter" ignores the rule's prohibition on a former judge representing anyone "in connection with a matter" in which that former judge previously had participated personally and substantially as a judge. Thus, the question presented is, more precisely, whether respondent represented husband "in *415 connection with" the earlier dissolution proceeding when **197 he represented husband in the contempt proceeding. We conclude that he did.
Judge Anderly's authority to rule on wife's 2014 motion to impose conditions on husband's parenting time to address wife's concern about the daughter's pet allergies derived directly from the court's jurisdiction over the dissolution proceeding. The dissolution judgment recited,
"The Department of the Honorable Steven L. Maurer will maintain jurisdiction over this matter and hear future reviews and modifications."
And, in fact, as noted, respondent issued orders in a 2011 modification proceeding between the parties. Judge Anderly's February 2014 order, alleged to have been violated in the contempt proceeding, imposed further conditions on visitation and thus was a modification of respondent's order in the dissolution proceeding.
The contempt proceeding was "in connection with" that matter. The contempt proceeding, the 2014 modification proceeding, and the original dissolution proceeding all involved the same parties litigating in the same court, and all three generally related to the imposition of conditions on husband's parenting time. That is, the issue in the contempt proceeding was whether husband complied with the modified terms of the dissolution judgment pertaining to his parenting time. Respondent's representation of husband with respect to that issue was "in connection with" the dissolution proceeding.
Two other considerations bolster our conclusion that respondent's representation of husband in the contempt proceeding was "in connection with" the dissolution proceeding. First, wife sought modification of the dissolution judgment in the contempt proceeding. Specifically, in addition to seeking remedial sanctions for husband's alleged violation of Judge Anderly's order, wife sought to modify the dissolution judgment to require husband's home to be inspected for cats before the daughter's visits there and to require certain changes in the daughter's health insurance coverage. Judge Darling ultimately rejected the modification request; it was not properly before the court, because wife, appearing **198 pro se , had failed to comply with the rules governing motions to modify a dissolution judgment. Respondent conceded below and in this court that RPC 1.12(a) would have prohibited him from representing husband in the contempt proceeding if wife had properly brought her modification request before Judge Darling, because, in that circumstance, wife would have been seeking to modify his original dissolution order.
However, whether wife's request was properly before the trial court is not determinative. Regardless of procedural deficiencies, wife brought a request for modification of the original dissolution judgment signed by respondent before Judge Darling in the contempt proceeding. And, as we have already explained, a proceeding to modify a dissolution judgment is in connection with the dissolution proceeding itself. We do not suggest that wife's improper request for modification of the dissolution judgment transformed the contempt proceeding into a modification proceeding, or that a party could unilaterally expand the scope of a matter by seeking relief on an unrelated issue. But wife's request for modification, which was related to her contempt motion and to the underlying dissolution proceeding, supports our conclusion that respondent's representation of husband in the contempt proceeding was representation in connection with the earlier dissolution proceeding.
Second, respondent's own statement to the court on behalf of husband during the contempt proceeding suggests that he, too, viewed the two matters as connected. Respondent, in his opening remarks, referred to "the original divorce back in 2008." He asserted that, in the dissolution proceeding, wife had made unfounded accusations of sexual abuse against husband, and he argued that the present contempt proceeding was an "outgrowth of that." We agree. Wife's contempt motion, in which she complained of husband's failure to adhere to the terms of a modification of a dissolution judgment that respondent earlier had signed, is an "outgrowth" of the dissolution proceeding.
*416 Respondent argues that the 2014 modification proceeding was a "superseding intervening proceeding between the dissolution proceeding and the contempt proceeding,"
**199 because, essentially, no issue pertaining to pets arose in the dissolution proceeding. That narrow focus on the precise disputes resolved in the dissolution proceeding is misplaced. It is unsurprising that a modification proceeding addresses a matter that the parties did not specifically foresee at the time of the dissolution. That fact does not alter the conclusion that the modification proceeding was the same matter as the original dissolution. Respondent's representation of husband in the contempt proceeding, which arose out of the modification proceeding and involved the same parties and, generally, the same issues of conditions of parenting and visitation, was "in connection with" the dissolution proceeding in which he participated personally and substantially as a judge. We therefore conclude that respondent's conduct in representing husband in that proceeding without wife's written consent violated RPC 1.12(a).
We turn to consider whether respondent's violation of RPC 1.12(a) also violated RPC 8.4(a)(4), which prohibits conduct prejudicial to the administration of justice. To establish a violation of RPC 8.4(a)(4), this court has stated that the Bar must show: (1) that the accused lawyer engaged in "conduct" by doing something that the lawyer should not have done or by failing to do something that the lawyer was supposed to do; (2) that the conduct occurred during the course of a judicial proceeding or another proceeding that has the trappings of a judicial proceeding; and (3) that the conduct was prejudicial, because it involved several acts that caused or could have caused some harm to the administration of justice or because it involved a single act that caused substantial harm to the administration of justice. In re Lawrence , 350 Or. 480, 485-86, 489, 256 P.3d 1070 (2011) (to prove violation of RPC 8.4(a)(4), court requires "proof by clear and convincing evidence that an accused's conduct in a specific judicial proceeding caused actual or potential harm to the administration of justice and, when only one wrongful act is charged, that actual or potential harm must be 'substantial' "). Prejudice to the administration of justice can occur when the lawyer's conduct harms (or has the potential to harm) either the substantive rights of a party to the proceeding or the procedural functioning of a case or hearing. Id . at 486, 256 P.3d 1070.
**200 The first two elements of a violation of RPC 8.4 (a)(4) are satisfied in this case: we have found that respondent engaged in misconduct, and it is undisputed that the misconduct occurred during the course of a judicial proceeding. It is with respect to the third element that the parties differ. During oral argument, the Bar argued that this case involves a single act that caused substantial harm to the integrity of the judicial system and the perception of fairness. Respondent, by contrast, argued that neither wife nor the judicial system was actually harmed at all, nor was there potential for substantial harm.
As a preliminary matter, we agree that respondent's representation of husband without wife's written consent amounted to one continuous course of conduct. His interactions with wife and the trial court were limited to one email to wife regarding scheduling and his appearance at the contempt hearing. In these circumstances, we view respondent's conduct as a single act. See In re Lawrence , 337 Or. 450, 467-68, 98 P.3d 366 (2004) (lawyer's misconduct occurred in one in-chambers conference with judge, and Bar did not point to other acts that, taken together with that one instance of misconduct, would constitute repeated conduct causing some harm to the administration of justice). The question, then, is whether respondent's representation of husband in the contempt proceeding caused or could have caused substantial harm, either to wife or to the procedural functioning of the case.
The Bar contends that respondent's representation of husband in the contempt proceeding had the potential to improperly influence Judge Darling, because, as the judge in the underlying case, respondent's advocacy carried additional weight. Additionally, the Bar argues that respondent's knowledge of wife's behavior in the dissolution proceeding provided him with special insight in how to seek to undermine her credibility at the contempt *417 hearing. Finally, respecting harm to wife, the Bar argues that
"it is clear from the record of the contempt hearing that [wife] felt personal animosity towards [respondent] and that his presence at the hearing unnerved her. It is reasonable to conclude that her breakdown during the contempt hearing was due, in part to his advocacy against her."
**201 On de novo review, we find that respondent's conduct caused potential harm to the functioning of the proceeding because respondent's status as the judge in the earlier proceeding could have given his pronouncements undue weight. However, Judge Darling did not appear to have been swayed by respondent's effort to relate the present contempt proceeding to wife's conduct in the earlier dissolution proceeding. Rather, she cut him short, stating,
"I don't think we're here on that Mr. Maurer. What we're here on is a court order that required your client to do something and whether or not he's violated it. Specifically, related to animals."
We conclude that the potential for harm to the functioning of the proceeding resulting from a former judge's undue influence over the proceeding is not "substantial." As Judge Darling demonstrated, judges are not especially susceptible to pressure to rule a certain way simply because the advocate is a former judge.
We also find that respondent's representation of husband caused actual harm to wife. Wife suffered actual injury, in the form of unwarranted additional anxiety, because she was forced to litigate the contempt proceeding against an opposing counsel who, as a judge, had previously ruled that her previous concerns lacked merit and who had insight into her mental state. However, the Bar has failed to demonstrate by clear and convincing evidence that the harm to wife was substantial.
On this record, we conclude that neither the actual nor the potential harm to either the functioning of the court or to wife was "substantial." In the absence of clear and convincing evidence of substantial harm-actual or potential-caused by respondent's misconduct, we conclude that that the Bar has failed to establish that respondent engaged in conduct prejudicial to the administration of justice in violation of RPC 8.4(a)(4).
IV. SANCTION
We turn to consider the appropriate sanction for respondent's misconduct. The Bar urges this court to suspend respondent for 30 days. For the following reasons, we **202 agree that a 30-day suspension is an appropriate sanction for respondent's misconduct.
In considering the appropriate sanction, this court follows the analytical framework set out in the American Bar Association's Standards for Imposing Lawyer Sanctions (1991) (amended 1992) (ABA Standards). In re Webb , 363 Or. 42, 50, 418 P.3d 2 (2018). Under that framework, the court first considers three factors that point us to a preliminary determination of the appropriate sanction: (1) the ethical duty violated; (2) the respondent's mental state at the time of the misconduct; and (3) the potential or actual injury caused by the respondent's misconduct. Id. ; ABA Standard 3.0. Next, we consider whether any aggravating or mitigating circumstances are relevant to our determination of the appropriate sanction. Id . Finally, we determine the appropriate sanction in light of this court's case law. Webb , 363 Or. at 50, 418 P.3d 2.
A. Duty Violated
Respondent's representation of husband violated his duty to avoid a conflict of interest. ABA Standard 4.3.
B. Mental State
Respondent knew that he had previously presided over the dissolution proceeding involving husband and wife; that Judge Anderly's February 2014 order, out of which the contempt proceeding arose, was a modification of the dissolution judgment; that the contempt proceeding involved the identical parties litigating in the same court and generally related to the same issue-the imposition of conditions on husband's parenting time; and that he had not obtained wife's *418 written consent to his representation of husband. That is, respondent had a conscious awareness of the nature and attendant circumstances of the facts constituting his misconduct. However, because respondent believed that the contempt proceeding was not the same "matter" as the dissolution proceeding, he lacked the conscious objective or purpose to accomplish a particular result. We therefore conclude that respondent's conduct in representing husband in the contempt proceeding was "knowing." ABA Standards **203 at 7 (defining "knowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result").
C. Injury
Turning to the issue of injury, we note that the ABA Standards define "injury" as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct." Id . The standards recognize "potential injury," which is injury "that is reasonably foreseeable at the time of the lawyer's misconduct." Id . As we have already explained, respondent's misconduct caused actual injury to wife and potential injury to the functioning of the proceeding, but neither the actual nor the potential injury was substantial.
D. Presumptive Sanction
Based on the duty that respondent violated by his conduct, his mental state in engaging in that conduct, and the potential and actual injury that the conduct caused, the ABA standards identify a suspension as the presumptive sanction. See ABA Standard 4.32 ("Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.").[3]
E. Aggravating and Mitigating Circumstances
The Bar argues that three aggravating circumstances apply. We agree that two of those aggravating factors apply. First, wife was a "vulnerable victim." ABA Standard 9.22(h). She appeared at the contempt proceeding pro se and respondent characterized her during the disciplinary proceeding as having a "somewhat fragile personality." Second, respondent has been licensed to practice law in Oregon continuously since 1975 and thus has substantial experience in the practice of law. ABA Standard 9.22(i).
**204 The Bar also argues that respondent's refusal to acknowledge the wrongful nature of his conduct is a third aggravating factor. ABA Standard 9.22(g). As this court has stated, accused lawyers have the right to vigorously defend themselves against all charges and may refuse to concede the Bar's factual allegations without reprisal for doing so. In re McGraw , 362 Or. 667, 695-96, 414 P.3d 841 (2018) (so stating); In re Davenport , 334 Or. 298, 321, 49 P.3d 91 (2002) (lawyer's refusal to admit Bar's factual allegations is not an aggravating factor). However, when a lawyer admits the Bar's factual allegations in nearly all material respects but continues to claim that his conduct was not blameworthy or detrimental, the lawyer has failed to acknowledge the wrongful nature of his conduct. McGraw , 362 Or. at 696, 414 P.3d 841 ; In re Strickland , 339 Or. 595, 605 n 9, 124 P.3d 1225 (2005). In this case, the Bar argues, respondent has consistently acknowledged that he knew that he previously had presided over husband's and wife's dissolution proceeding before undertaking to represent husband and that he had not obtained wife's written consent to that representation. The Bar contends that he refuses, however, to recognize that that representation violated the Rules of Professional Conduct, and he has denied that that conduct caused harm or potential harm to the judicial proceeding or to wife.
This case is distinguishable from McGraw and Strickland in an important respect: In each of those cases, the lawyer's insistence *419 that the conduct did not violate the rule was unreasonable. In McGraw , this court found that the lawyer's refusal to acknowledge the wrongfulness of his conduct was an aggravating circumstance, because the lawyer admitted, among other things, that he had charged his client fees higher than those agreed for the type of work performed, but he nonetheless claimed that his conduct did not violate the disciplinary rule prohibiting charging excessive fees. In Strickland , this court found that the lawyer's refusal to acknowledge the wrongfulness of his conduct was an aggravating circumstance, because he admitted the factual accuracy of the Bar's allegations that he had committed several criminal acts involving dishonesty, fraud, deceit, or misrepresentation, but he still claimed that his conduct did **205 not violate the disciplinary rule prohibiting such conduct involving dishonesty, fraud, deceit, or misrepresentation.
In this case, on the other hand, respondent has made a plausible legal argument that the conduct that he admitted to-representing husband in a contempt proceeding after having presided over the dissolution proceeding-did not violate the Rules of Professional Responsibility, because the contempt proceeding and the dissolution proceeding were not the "same matter." Although we have concluded that the contempt proceeding was in connection with the dissolution and that respondent's representation of husband therefore violated RPC 1.12(a), respondent's position was not unreasonable. In fact, as discussed, the trial panel agreed with respondent and concluded that he had not violated the rule. A lawyer does not refuse to acknowledge the wrongfulness of his or her conduct when he or she makes a plausible legal argument that the admitted conduct does not violate the disciplinary rules.
We also find that the following mitigating factors apply in this case. Respondent does not have a prior disciplinary record. ABA Standard 9.32(a). Respondent did not have a dishonest or selfish motive. ABA Standard 9.32(b). Respondent displayed a cooperative attitude toward the proceedings. ABA Standard 9.32(e). And respondent is of good character and has a good reputation in the community. ABA Standard 9.32(g).
We find that the aggravating factors and the mitigating factors are essentially in equipoise.
F. Case Law
Having made a preliminary determination that a suspension of some term is appropriate based on the ABA Standards and the aggravating and mitigating factors, we turn to this court's case law to help us determine the duration of that suspension. As we have noted in the past, case-matching in the context of disciplinary proceedings "is an inexact science." In re Sanai , 360 Or. 497, 541, 383 P.3d 821 (2016). That is particularly true in this case; this is a matter of first impression, insofar as this court has not previously decided a case involving a violation of RPC 1.12(a) or **206 its predecessor rule, former DR 5-109(A) (2004).[4] However, RPC 1.12(a) is a species of conflict rule, and, as such, our cases involving former and current client conflicts of interest provide us with some guidance. In that context, this court has repeatedly stated that a finding that a lawyer has violated the rule prohibiting current or former client conflicts of interest, "standing alone, typically justifies a 30-day suspension." In re Hostetter , 348 Or. 574, 603, 238 P.3d 13 (2010) ; In re Campbell , 345 Or. 670, 689, 202 P.3d 871 (2009) (same); In re Hockett , 303 Or. 150, 164, 734 P.2d 877 (1987) ("By itself, the violation of the conflicts rule *** would justify a 30-day suspension."). We think a 30-day suspension is appropriate in this case as well.
Respondent is suspended from the practice of law for 30 days, commencing 60 days from the date of filing of this decision.

Although the parties to the underlying proceeding have long been divorced, for simplicity's sake, we to refer to them throughout this opinion as "husband" and "wife."

Wife did not pursue modification of the judgment. However, about a week later, wife filed an "Objection to Petitioner's Attorney," based, among other things, on the fact that respondent had presided over the dissolution but had not obtained her consent to represent husband in the contempt matter. The court did not acknowledge that objection.

We recognize that ABA Standard 4.32 is, strictly speaking, inapposite, insofar as respondent's misconduct was not in knowingly failing to disclose the possible effect of a conflict to his client, but in failing to obtain wife's consent to his representation of husband. However, this standard comes closest to addressing the situation presented here.

Former DR 5-109(A) (2004) provided,
"A lawyer shall not represent a client in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator, or law clerk to such a person, unless all parties to the proceeding consent after full disclosure."